MARIE MINOR SANBORN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91533. Promulgated April 7, 1939.

*Charles E. Whittaker, Esq.,* and *Henry N. Ess, Esq.,* for the petitioner.

*Carroll Walker, Esq.,* and *Elizabeth B. Fegan, Esq.,* for the respondent.

722

**OPINION.**

OPPER: Petitioner contends that she is not within the reach of respondent's determination on the ground that the statute of limitations has run.

Her argument may be summarized as follows: First, the executors, having been discharged on March 31, 1930, had no further concern or authority with respect to any Federal tax matters, even though they thereafter, on April 8, 1930, signed and verified and on April 9, 1930, filed a Federal income tax return describing themselves as

executors; second, the proceeding instituted by them on behalf of the estate (the original taxpayer) in 1932 was consequently a nullity for every purpose and, even though it continued to be litigated for approximately five years, should be regarded as never having occurred and as being ineffectual to suspend the operation of the statute of limitations; and, third, that the statute has accordingly run since it expired one year after two years after the filing of the return.

This position appears at first glance to be so extreme and fantastic as not to be capable of support. Upon closer examination it becomes, if possible, even less engaging, and it develops that not one but all three of petitioner's contentions are untenable.

First, while it may be conceded for present purposes that the discharge of petitioners as executors terminated their powers under the law of the State of Missouri,[1] it does not follow that for purposes of Federal taxation they were without standing, particularly that their authority with respect to the institution on behalf of the estate of a proceeding before the Board was terminated. As we said in *William B. Weigel et al., Trustees,* 34 B. T. A. 237, 240; affd., 96 Fed. (2d) 387 (C. C. A., 7th Cir.):

> The notice of their discharge, which the executors gave to the Commissioner, is immaterial for present purposes. It did not serve to shorten the two-year period for assessment of the deficiency against the estate as provided in section 275 (a) of the Revenue Act of 1928. * * *. The discharge of executors after a final accounting does not serve to shorten the period for assessment of a deficiency against the estate, nor to extinguish the liability of the estate, for Federal income tax, even though the executors exercised due diligence in determining whether or not any such liability existed.

Moreover:

> Irrespective of their previous discharge by the probate court, the executors could have used the deficiency notice as the basis for an appeal before the Board and the period of limitation would have been stayed during the pendency of a petition before us even though we lacked jurisdiction to redetermine the deficiency. * * * [*Puget Sound National Bank of Takoma, Washington et al., Trustees,* 36 B. T. A. 386, 390.]

And entirely beyond this the provisions of the Revenue Act of 1928, section 312,[2] make it clear that the power under the revenue act of a fidu-

---

[1] See *Hulburd* v. *Commissioner,* 296 U. S. 300, 310, footnote 6.

[2] SEC. 312. NOTICE OF FIDUCIARY RELATIONSHIP.

(a) *Fiduciary of taxpayer.*—Upon notice to the Commissioner that any person is acting in a fiduciary capacity such fiduciary shall assume the powers, rights, duties, and privileges of the taxpayer in respect of a tax imposed by this title (except as otherwise specifically provided and except that the tax shall be collected from the estate of the taxpayer), until notice is given that the fiduciary capacity has terminated.

(b) *Fiduciary of transferee.*—Upon notice to the Commissioner that any person is acting in a fiduciary capacity for a person subject to the liability specified in section 311, the fiduciary shall assume, on behalf of such person, the powers, rights, duties, and privileges of such person under such section (except that the liability shall be collected from the estate of such person), until notice is given that the fiduciary capacity has terminated.

(c) *Manner of notice.*—Notice under subsection (a) or (b) shall be given in accordance with regulations prescribed by the Commissioner with the approval of the Secretary.

ciary to represent and take the place of the taxpayer, upon notice of a fiduciary relationship, does not terminate until contrary notice. Petitioner's signature, verification, and filing of an income tax return entitled "Mrs. Marie M. Sanborn, Executrix, Estate of Dr. W. E. Minor, Deceased" and executed "Marie M. Sanborn, John A. Minor, Executors" clearly gives the first type of notice. It was given on April 9, 1930, after the discharge on which petitioner relies as terminating her authority and as far as the record shows nothing happened thereafter to change the situation until after the filing of the petition in 1932. Even though it be conceded, as petitioner contends, that the petition was notice to the Commissioner of the termination of such fiduciary responsibility, that notice could not have been brought to the Commissioner's attention until after the petition had actually been filed with the Board.[3] This filing can thus by no remote inference be regarded as ineffectual, invalid, or void in so far as the provisions of the Federal revenue laws are concerned.

Second, the proceeding thus placed upon the docket of the Board, even though it had not been commenced under circumstances giving it every aspect of legality, would nevertheless have been sufficient to toll the running of the statute. And it would have had that effect until the decision of the Board therein became final, even though the circumstances had been such that they would eventually have required the dismissal of the petition. Revenue Act of 1928, sec. 277.[4] Both the express language of the section and the purpose to be served call for that interpretation. "Because the effect of the passage of time would be the same whether the Board made its decision on the merits or on some other ground, if the period stated in the statute of limitations meantime expired, it is reasonable to believe that Congress did not intend to have the time a proceeding was pending before the Board counted any more when the decision was a dismissal for want of jurisdiction than when it was not." *American Equitable Assurance Co. of New York* v. *Helvering*, 68 Fed. (2d) 46 (C. C. A., 2d Cir.), affirming 27 B. T. A. 247. As we said in *U S L Battery Corporation*, 32 B. T. A. 810, 812; affd., 84 Fed. (2d) 1020 (C. C. A., 2d Cir.), on authority of *American Equitable Assurance Co. of New York* v. *Helvering, supra,* certiorari denied, 299 U. S. 593:

The clear intent of these sections of the acts is that if a petition is filed with the Board upon the basis of a deficiency notice the Commissioner shall not make

---

[3] Rules of Practice before the U. S. Board of Tax Appeals, rules 6, 7, and 12.

[4] SEC. 277. SUSPENSION OF RUNNING OF STATUTE.

The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272 (a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for 60 days thereafter.

an assessment of the deficiency until the decision of the Board becomes final. The prohibition goes into effect when a deficiency notice is mailed and "if a petition" is filed with the Board it continues until the decision of the Board in the proceeding becomes final. To continue the force of the prohibition it is not essential that the petitioner be *the taxpayer* to whom the deficiency notice was sent. It is sufficient if a petition is filed on the basis of the notice of deficiency. In other words, the moving party in the petition filed from the notice must, for the purposes of the statute, be treated as *the taxpayer* until the decision of the Board has become final.

*Emily King Parker et al., Trustees*, 30 B. T. A. 342; affd., 84 Fed. (2d) 838 (C. C. A., 8th Cir.); *Olympic Refining Co.*, 32 B. T. A. 1056, 1063; see *E. B. Teague*, 32 B. T. A. 641, 643.

Of course, in the earlier proceeding involving the estate, the Board did not dismiss the proceeding nor determine that it was without jurisdiction. It held the case for disposition on the merits, was affirmed on appeal taken by this petitioner, and certiorari was denied by the Supreme Court. Instead of treating this as an aspect of the present proceeding less favorable to her than the cases cited, petitioner seeks to give it the opposite effect by making the further contention that, even though the proceeding before the Board be regarded as suspending the operation of the statute, the Board's decision became final when the time for appeal expired, in view of the fact that petitioners there were not authorized to appeal from the Board's ruling. We are not favorably impressed by this argument, for the reasons stated in *Liberman's Committee* v. *Commissioner*, 54 Fed. (2d) 527, 530 (C. C. A., 2d Cir.):

 \* \* \* Although we hold that a correct application of section 281 to the facts did not give the petitioners the powers, rights, and privileges of a taxpayer, nevertheless, since the Board has assumed to consider the petitioners as subject to its jurisdiction, we think they may be deemed the taxpayer for purposes of appeal to this court. Otherwise the erroneous order could not be reviewed.

If more were needed, the statute is explicit as to the time when the Board's decision becomes final. The Revenue Act of 1928 [5] makes the provisions of section 1005 of the Revenue Act of 1926 applicable. The latter section [6] lists four hypothetical situations, of which only the third is clearly applicable to the earlier proceeding. That is:

---

[5] Sec. 272 (h).

[6] SEC. 1005. (a) The decision of the Board shall become final—

(1) Upon the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time; or

(2) Upon the expiration of the time allowed for filing a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals and no petition for certiorari has been duly filed; or

(3) Upon the denial of a petition for certiorari, if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals; or

(4) Upon the expiration of 30 days from the date of issuance of the mandate of the Supreme Court, if such Court directs that the decision of the Board be affirmed or the petition for review dismissed. \* \* \*

"* * * if the decision of the Board has been affirmed or the petition for review dismissed by the Circuit Court of Appeals." In that event the decision of the Board becomes final "upon the denial of a petition for certiorari." It appears to be inescapable that any suspension of the statute of limitations thus terminated sixty days after May 24, 1937, the date when certiorari was denied, and that the statute against this petitioner did not expire until a year thereafter,[7] well beyond the date, September 22, 1937, of the deficiency letter addressed to her.

It does not follow from what has been said that petitioner's contention that the Board and the courts were without jurisdiction of the earlier proceeding is to be accepted. While the question does not call for decision here, a reading of *Waldemar R. Helmholz*, 28 B. T. A. 165; affd., 75 Fed. (2d) 245; affd., 296 U. S. 93, and of *William B. Weigel et al., Trustees, supra*, suggests the possibility that, in a case where the executor has been discharged but the estate is properly served with a deficiency notice within the two-year period, the executor has an election whether to accept the jurisdiction of the Board and litigate the substantive question of estate liability, or to challenge the authority of the Commissioner to proceed further. If he does the latter by unmistakable assertion made in an appropriate and timely fashion, that election will be respected. *Hulburd* v. *Commissioner*, 296 U. S. 300. In the language of Mr. Justice Cardozo in that case, such a result would be consistent with "the thought of many judges" that "an executor discharged after a full and fair accounting is no longer to be vexed by the annoyance and expense of defending fruitless suits with assets no longer available for reimbursement or indemnity." This is far from saying, and we do not so read the *Hulburd* case, that an executor may not if he chooses resort to procedure before the Board for determining the substantive question of liability. Upon this principle of an election in the executor the three cases last cited may be reconciled. The *Weigel* case [8] decided the substantive question of estate liability after the executor's discharge and was affirmed long after the decision in *Hulburd* v. *Commissioner, supra*. And in *Waldemar R. Helmholz, supra*, which was affirmed by the Supreme Court within a month of its decision in the *Hulburd* case, we said (p. 169):

* * * It appears that the petitioner duly administered the estate, made final settlement of his accounts, and was discharged as administrator by the County Court of Milwaukee County in September 1928. It does not appear that the petitioner ever notified the Commissioner of such final settlement and discharge. The settlement of the estate and the final discharge of the administrator before the tax obligations were discharged neither extinguished the tax nor relieved the petitioner from his liability under the law to pay it. Petitioner has

[7] Revenue Act of 1928, sec. 311.

[8] This appears to have involved an Illinois estate, like the *Hulburd* case. Cf. *Olsen* v. *Helvering*, 88 Fed. (2d) 650.

invoked the jurisdiction of this Board for a redetermination of the deficiency set forth in the notice addressed to him as executor of the decedent's estate. No one has been misled as to the liability asserted. In these circumstances we accept jurisdiction of the proceeding.

For the reasons stated it is not now necessary to comment further upon this question, nor upon the somewhat related issue raised by respondent that petitioner is now estopped to deny the Board's jurisdiction. Other distinctions from the *Hulburd* case are not difficult to find. That case was decided under the Revenue Act of 1926 and before the passage of section 312 of the 1928 Act referred to above. The Supreme Court expressly refrained from deciding what would be the result if that section had been applicable as it was found to be by the court below, 76 Fed. (2d) 736.[9] Nor was the effect upon the statute of limitations involved or decided, although that is the only question we have to determine here. As we said in *Puget Sound National Bank of Takoma, Washington et al., Trustees,* 36 B. T. A. 386, (p. 390): "The question of whether the liability was barred by the statute of limitations was decided by us in a preliminary report (21 B. T. A. 23) and was not presented to the Supreme Court for decision." It seems clear that the most that can be said for the *Hulburd* case is that it is authority for concluding that the Board and the Circuit Court of Appeals erroneously decided the earlier proceeding.[10] As we have said, and for the further reason that certiorari was there denied by the Supreme Court, this conclusion is difficult in the extreme to assume; but, assuming it for purposes of argument, its correctness can not be collaterally attacked here, *Jahncke Service, Inc.,* 20 B. T. A. 837; and in any event it was still a proceeding on the docket of the Board sufficient to toll the statute until the decision of the Board became final upon the denial of certiorari. That result follows inevitably from the language of the statute and from the logic of the circumstances. *American Equitable Assurance Co. of New York* v. *Helvering, supra; U S L Battery Corporation, supra; Emily King Parker, supra; Olympic Refining Co., supra;* and *E. B. Teague, supra.*

Third, and finally, if we accept the petitioner's argument as to the status of the executors, no necessity appears for any tolling of the statute. To state her position as set forth in her brief, petitioner says: "An executor or administrator after final settlement and discharge becomes *functus officio* and can no longer act as such or as a representative of the estate for any purpose whatsoever." If that be so, and it is from that premise that petitioner's entire argument proceeds, the filing of the income tax return in April 1930, after the for-

[9] A comparable comment applies with respect to *United States* v. *Continental National Bank & Trust Co.,* 305 U. S. 398.

[10] See *Olsen* v. *Helvering, supra.*

mal discharge, was an unauthorized act. It must be treated as a nullity, at least to the same extent—if again we accept the petitioner's argument—as the filing of the petition or of the appeal. We are thus driven to conclude that no return was filed by the estate, and if no return was filed the statute of limitations never began to run. Revenue Act of 1928, sec. 276 (a). It thus becomes completely immaterial whether anything was effective to toll the statute, and the Commissioner's assessment and any proceedings to collect would have been valid at any time. *Amalgamated Sugar Co.*, 24 B. T. A. 143; *Will T. Caswell*, 36 B. T. A. 816, 827.

*Decision will be entered for the respondent.*